DONALD L. ROBINSON, Plaintiff-Appellant, v. THE SECRETARY OF STATE *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0492

Opinion filed February 16, 1989.

Herman G. Bodewes, of Griffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Kimary Lee, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE GREEN delivered the opinion of the court:

Defendant Secretary of State of the State of Illinois (Secretary) laid off plaintiff Donald L. Robinson (Robinson), his certified employee holding the position title of executive IV, effective January 31, 1983. On February 8, 1983, Robinson filed an appeal from the layoff order with the Merit Commission (Commission) of the office of the Secretary of State (Ill. Rev. Stat. 1981, ch. 124, par. 108) pursuant to provisions of section 9a of the Secretary of State Merit Employment Code (Code) (Ill. Rev. Stat. 1981, ch. 124, par. 109a) and Commission rules. The Commission dismissed the appeal, holding it did not set forth the *prima facie* case required by section 9a. On administrative review, the circuit court of Sangamon County reversed the decision of the Commission and remanded the case to the Commission with directions to hear the matter on its merits.

Hearings were conducted before a Commission hearing officer. On June 30, 1987, the hearing officer filed with the Commission his findings and recommendation that Robinson's appeal be denied. Prior to the recommendation, the document concluded with the expression by the hearing officer of an opinion that Robinson had "failed to sustain his burden of proof that his layoff was a subterfuge for discharge as is required for relief" under Commission rules. On July 15, 1987, the Commission entered an order adopting the findings and recommended decision of the hearing officer and denying the appeal.

Robinson again took administrative review to the circuit court of Sangamon County. On February 5, 1988, that court affirmed, ruling that (1) the Commission's determination that subterfuge had not been proved was not contrary to the manifest weight of the evidence; and (2) plaintiff was not deprived of procedural due process. Robinson has appealed to this court. We reverse.

On appeal, Robinson maintains: (1) the purported lack of funds, upon which the Secretary seeks to justify the layoff, did not exist; (2) the layoff violated his seniority rights; (3) that violation was intentional; (4) the procedures used by officers involved in the layoff violated the classification plan of the Code; (5) the emergency legislation, upon which the Secretary's contention of lack of funds was partially based, does not authorize permanent layoff of employees; and (6) the layoff was made in bad faith and was a breach of discretion. The major thrust of Robinson's contentions is twofold. One is that the procedures involved here were such that when taken together, an employee can too easily be laid off and eventually terminated without proper consideration given to seniority and work performance. The other is that the layoff here was a subterfuge to get rid of Robinson.

We conclude that a fatal flaw existed in the procedures used here in regard to the basic requirement that the layoff be based upon a lack of funds. We need not consider the issue of whether the layoff was subterfuge. The evidence in that regard was circumstantial, and the Commission, whose hearing officer saw and heard the witnesses, determined that subterfuge was not proved. We could set aside that factual determination only if it was contrary to the manifest weight of the evidence. *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 472 N.E.2d 434.

In order to explain our decision, some of the evidence must be considered. Most of that evidence on the issue we deem to be dispositive was undisputed. After having worked in the governor's office and with the department of personnel for the Code department, Robinson began working in June 1977 for the then Secretary in that officer's

department of personnel holding the title personnel executive I. His duties primarily involved labor and employee relations. In the spring of 1979, he became deputy director of that department and became responsible for the labor and employee relations program. His duties then included negotiations of contracts, grievance resolutions, and contract administration as well as other matters. He was involved in the implementation of the Code and the personnel rules for the Secretary. On July 16, 1981, Robinson's title was changed to executive IV, a lesser position than those previously held with the Secretary, and Robinson's salary was "frozen" at its existing rate. His duties were changed but he continued to perform some labor relations work together with that concerning staff development.

Robinson remained in the executive IV status until his layoff in January 1983. Then, as now, section 10b.13 of the Code authorized the department of personnel to provide by rule approved by the Commission for "layoffs by reason of lack of funds or work." (Ill. Rev. Stat. 1981, ch. 124, par. 110b.13.) Pursuant thereto, Rule 2–540 of the department of personnel rules was duly enacted, approved, and in existence at the time of Robinson's layoff. It stated:

"LAYOFFS AND REEMPLOYMENT

LAYOFF PROCEDURE: A department may request the layoff of an employee because of lack of funds, material change in duties or organization, or lack of work, or the abolition of a position for any of these reasons. Based on class, department, county or other designation, layoffs shall be within organizational units justified by operations and approved prior to the layoff by the Director of Personnel.

A proposed layoff is subject to the approval of the Department of Personnel before becoming effective and shall include the following in the organizational unit in which the layoff is proposed:

(a) A list of all employees showing status and total continuous service;

(b) A listing of these employees to be laid off;

(c) Performance records of all employees in classes affected by layoff plan;

(d) An explanation of any layoff not in order of continuous service;

(e) An explanation of the organizational unit selected, reflecting department, division, facility, geographical, operational and other elements deemed relevant by the Division Director department director." 6 Ill. Reg. 7526 (eff. June 16,

1982) (now see 80 Ill. Adm. Code 420.400, at 2665 (Supp. Jan. 1, 1987).

In early January 1983, the deputy director of the department of personnel presented to the acting director of the department of personnel, for the latter's approval, pursuant to Rule 2—540, a plan for the layoff of Robinson and two other employees. That document indicated a shortage of funds had resulted because the appropriation for the department of personnel had provided for only 29 employees and the department had 32 employees. The proposed plan further explained that the duties of those who were chosen for layoff could most easily be given to other persons. The plan stated that Robinson's duties pertinent to employee and labor relations would be performed by the deputy director with assistance of the staff, with his other duties to be handled by the staff or, when necessary, the deputy director. The substance of this change would be to restore to the then deputy director the functions which Robinson had when he held that position.

Argument is made on behalf of the Secretary that the layoff was justified by a lack of funds resulting from legislation known as the Emergency Budget Act of Fiscal Year 1983 (Emergency Act) (Pub. Act 82—1038, eff. Dec. 30, 1982; 1982 Ill. Laws 3034). This statutory provision was enacted in response to a fiscal crisis occurring in the State's 1983 fiscal year (July 1, 1982, through June 30, 1983) and became effective December 30, 1982 (1982 Ill. Laws at 3038). It required each State agency to place 2% of its budgeted appropriation in a reserve account. The hearing officer's findings and recommendation adopted by the Commission found that the Emergency Act created a "lack of funds" justifying the layoff.

The layoff and the budget reductions required by the Emergency Act took place at about the same time. However, the operation of the Emergency Act was not given as a reason for the layoff in the plan submitted to the acting director of the department of personnel. The deputy director of the department of personnel testified the acting director approved the layoff plan on the basis of the information contained in that plan. No evidence was presented that the Emergency Act was ever considered in the determination to lay off Robinson. Nor was any evidence presented that the salary allocated to Robinson was ever used to supply the 2% reserve required by the Emergency Act. The propriety of the layoff must be judged upon the basis of the reasons for which it was made and upon the use made of the funds saved. We cannot agree that the layoff plan was justified by the existence of the Emergency Act.

The question of whether the "lack of funds" element of the

requirements for the layoff provided for by section 10b.13 of the Code and Rule 2—540, enacted pursuant thereto, was established must be determined in the light of the stated reason for the layoff. The evidence was undisputed: (1) the Secretary requested funds to employ 29 people in the department of personnel for fiscal year 1983; (2) the position held by Robinson was one of those for which appropriation was sought; and (3) the appropriation was made as sought. Under these circumstances, to permit the department of personnel to continue to maintain in excess of 29 people to remain on the payroll and then to layoff a certified employee in a position for which an appropriation had been made in order to cover the deficit would create a precedent whereby any department could easily terminate a certified employee without proper cause. Neither section 10b.13 nor Rule 2—540 envisions such a concept of a "lack of funds" as a basis for a layoff. The record showed, as a matter of law, that a "lack of funds" as described in the layoff plan did not exist.

At the time of Robinson's layoff, the only available administrative procedure whereby an employee could contest a layoff was section 9a of the Code (Ill. Rev. Stat. 1981, ch. 124, par. 109a) under which he proceeded here. Section 9a provides for a certified employee who believes "he or she has been separated from employment *** by a personnel transaction used as a subterfuge for discharge" to proceed before the Commission. (Ill. Rev. Stat. 1981, ch. 124, par. 109a.) Section 9a further states that in any hearing, the employee must establish "a *prima facie* case proving that the employee was pretextually discharged." (Ill. Rev. Stat. 1981, ch. 124, par. 109a.) That legislation makes no reference to allowing a separated employee to contest his or her separation upon the basis the separation merely resulted from a violation of the Code or rules enacted pursuant thereto where no pretext or subterfuge occurred.

■ The Commission order focused primarily on the lack of proof of subterfuge. However, argument was not made on behalf of the Secretary that a substantial failure to follow statutory or rule provisions in making a layoff would not be sufficient ground to vitiate the layoff. Moreover, by the time the Commission heard evidence on remand, section 8c(13) of the Code authorized the Commission to hear appeals of layoffs based upon violation of the Code or rules enacted pursuant to the Code and to order reinstatement "if it is proven that the provisions of the [Code or the rules] have been violated or have not been complied with." (Ill. Rev. Stat. 1985, ch. 124, par. 108c(13).) We conclude the Commission had power here to order a remedy for Robinson even if subterfuge upon the part of subordinates of the

Secretary was not proved. As we have indicated, we hold that the evidence failed, as a matter of law, to prove the existence of the "lack of funds" to support Robinson's discharge.

Accordingly, we reverse the decisions of the circuit court affirming the Commission and of the Commission denying Robinson's appeal. We remand the cause to the Commission with directions to determine the appropriate remedy for Robinson.

Reversed and remanded with directions.

McCULLOUGH, P.J., and SPITZ, J., concur.